---

(7 App. Div. 198)

### In re SAWYER et al.

### In re NORTHERN BANK OF TENNESSEE.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—ESTOPPEL TO CLAIM.

On the day after a debtor doing business in New York had made an assignment there, a creditor in Tennessee, without notice of the assignment, and before it was filed in that state, attached property of the assignor therein. The attachment was sustained on the ground that at the time thereof the assignment had not taken effect on the property attached. *Held*, that such creditor was not estopped from claiming a share

of the assigned estate, as the attachment was not in hostility to the assignment.

2. SAME—EXTENT OF RIGHT TO SHARE IN ESTATE.

 In such case the creditor is entitled to share in the distribution of the estate only to the extent of the balance of his share after deducting the amount realized in the attachment suit.

Appeal from special term, New York county.

Claim by the Northern Bank of Tennessee against Marshall Ayres, as assignee for the benefit of creditors of Sawyer, Wallace & Co. From an order confirming the report of the referee, the assignee appeals. Reversed in part.

On the 4th day of September, 1890, the firm of Sawyer, Wallace & Co., of this city, failed. On the same day they made a general assignment for the benefit of their creditors to Marshall Ayres. The Northern Bank of Tennessee was a creditor of Sawyer, Wallace & Co. That bank was notified of the failure, but not of the assignment. Upon the 5th day of September, 1890, the bank took out an attachment in the chancery court of Montgomery county, Tenn., against Sawyer, Wallace & Co., and attached thereunder a fund amounting to $1,043, which belonged to Sawyer, Wallace & Co. This was done in ignorance of the assignment. Subsequently Mr. Ayres, the assignee, upon his own petition, became a defendant in this Tennessee suit, and answered, claiming the fund. The Tennessee court held that the bank secured a priority over the assignee, owing to the fact that it had attached the fund there before the registration of the assignment in Tennessee, and without its having had actual notice thereof. Accordingly the fund, amounting to $1,043, was paid over to the bank. Subsequently the bank presented its claim to the assignee here, demanding its pro rata share of the assigned estate. It credited the amount received under its Tennessee attachment upon its total claim, and insisted upon the recognition of the balance as its lawful claim upon the assignee and the assigned estate. The bank's claim was rejected by the assignee, and a referee was appointed in the court of common pleas to determine its validity. The referee took the bank's view of the case, and allowed its full claim, at $10,996.96. The original claim was $12,039.96. Deducting from this sum the credit of $1,043, we have the balance allowed by the referee,—$10,996.96. From the order confirming the referee's report, the assignee appeals.

Argued before VAN BRUNT, P. J., and BARRETT, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Michael H. Cardozo and Edgar J. Nathan, for appellant.
William N. Dykman, for respondents.

BARRETT, J. The assignee makes two points against the claim of the Tennessee Bank: First, that it is estopped from making any claim against the assigned estate, because of its hostile attitude with regard to the Tennessee attachment; second, that, if not thus estopped, it should at least credit the amount collected under the attachment on account of its distributive share under the assignment.

We do not think that the assignee's first point should be sustained. The proceedings were instituted by the bank against its debtors' property in the state of Tennessee without knowledge on its part of the assignment. The property there attached was thus secured to the bank by the laws of its own state. By those laws the property passed to the assignee, subject to the rights of the attaching creditor. The assignment itself was not attached, nor did the

Tennessee court hold that it was null and void. All that the court decided was that the attaching creditor, by its bill filed, secured a priority over the assignee. If there had been a surplus after paying the debt of the bank, it would have gone to the assignee. It was not, therefore, from any inherent vice in the assignment that the bank prevailed. It was simply because, under section 2887 of Milliken & Vertrees' Code of the state of Tennessee, then in force, the instrument did not, as against it, take effect upon the property attached. The bank did not originally proceed in hostility to the assignment. It then knew nothing of it. When the assignee subsequently came in and claimed the attached property, the rights of the bank were already fixed. They had become so fixed without any act of the creditor in hostility to the assignment. It cannot be said that the retention of rights thus acquired in ignorance of the attachment effected a hostile election. The bank was not bound to abandon its lien, and recognize the assignee's claim to the fund, under penalty of ostracism as a cestui que trust under the assignment. There was no affirmative act in hostility to the assignment, —no repudiation of the trust which had been created for its benefit. It simply permitted the law of Tennessee to take its course; asserting its right to what that law had secured to it, and reducing its lien to possession. There was nothing in this position inconsistent with the bank's assent to the assignment, when notified thereof, and acceptance of the assignee as its trustee thereunder.

We think, however, that the assignee's second point should be sustained. Here we have an entirely different question. The bank now comes forward as a cestui que trust claiming its equal share of the assigned estate. What, then, is its position? It has dismissed the trust estate,—lawfully, it is true,—for its individual advantage and preference, and yet it seeks an equal share of the residue. That certainly is not equitable. It cannot have both. It may retain what it has preferentially secured, and neither the assignee nor the other creditors can complain. It had a legal right to what it thus secured, and the question on that head cannot be reopened. But, when it claims an equal share of the trust estate, it must be an equal share of the entire estate,—that which he would have but for the assertion of the creditors' legal right under the laws of Tennessee. It is a mistake to suppose that the attached property was not part of the assigned estate, or that it was given to the bank by the Tennessee court because it was not covered by the assignment. On the contrary, it clearly passed to the assignee upon the execution and delivery of the assignment. It so passed under the laws of Tennessee, as well as under our laws. But although it so passed even in Tennessee, as between the parties, it failed to have that effect there as against the bank. Thus the law of Tennessee enabled the bank to obtain priority over the assignee; that is, to secure to itself a part of the assigned estate. But it certainly did not decree that the attached fund was dehors the assignment. We think that when the creditor, under such circumstances, comes here and asks for its rights as a cestui que trust under the assignment, it must offer to abandon its preferences,

though legally acquired, and do equity. It is just to subject it to that amount of coercion. It can have its fair share of the estate, the same as our own creditors. It ought not to have more. To effect this equitably, it must make the estate whole, so far as the estate has been depleted, however legitimately, by it. The estate, in equity, consists of what the assignor conveyed to the assignee by the terms and intention of the assignment. The parties then settled what was embraced within the instrument. The law of Tennessee has not settled anything to the contrary. It has simply, as against the claimant, denied the instrument its legal effect with regard to a part of the assigned property. The principle above stated is supported by the text writers, and seems to be the established law of England. Mr. Wharton, in his Conflict of Laws, says (sections 798) that "a creditor who has obtained a dividend in a foreign bankruptcy, or by a foreign attachment subsequent to the domiciliary bankruptcy, can only claim such a dividend at the domiciliary bankruptcy as will establish equality between himself and other creditors appearing before the domiciliary assignee." For this rule he cites many authorities, including Bonnaffe's Case, 23 N. Y. 169. Mr. Wharton also gives the English rule, as stated by Sir R. Phillimore (IV. 549), as follows: If the law of the foreign state, in which the property may be, should, in violation of comity, exercise jurisdiction over the property, and, by express regulation, prefer the claim of the attaching creditor to the previous assignment under the bankruptcy, the title so conveyed by the lex rei sitæ and lex fori would not be disregarded in England, so as to compel the creditor, when within English jurisdiction, to refund the property so acquired. Such a creditor, however, will not be allowed to take advantage of the English bankruptcy without first communicating the benefit derived from his proceedings in the foreign state. Whart. Confl. Laws, § 389. Judge Story, quoting from Mr. Bell's Commentaries, says that a creditor in a foreign country would not, if preferred by the laws of that country, be obliged to refund in England, but that such creditor cannot take advantage of the bankrupt laws of England without communicating the benefit of his foreign proceedings. Story, Confl. Laws, § 423e. The language of Lord Mansfield in Waring v. Knight, quoted by Chief Justice Eyre in Philips v. Hunter, 2 H. Bl. 413, is terse and pointed:

"If a man uses legal diligence in a foreign country, and obtains a preference, it cannot be helped; but, if he afterwards comes here for a dividend, he shall first refund what he has so acquired by his legal diligence, and come in equally with the rest of the creditors, or not come in at all."

Upon both principle and authority, therefore, we think that the assignee's contention upon this point is right. The order appealed from should therefore be modified by allowing the bank its full claim, at the sum of $12,039.69, and awarding to it all dividends thereupon; crediting the assignee, however, upon such dividends, as part payment thereof, the amount of the Tennessee collection, to wit, $1,043. In all other respects the order appealed from should be reversed, with costs of this appeal to the assignee, payable out of the claimant's dividends, and to be deducted therefrom. All concur.